Wallace 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-95-00421-CV







Carole Ann Wallace and Dennis Arthur Wallace, Jr., Appellants



v.



Barbara Wallace Hernandez, Appellee








FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY 


NO. 63,385, HONORABLE GUY HERMAN, JUDGE PRESIDING








 When Carole Ann Wallace and Dennis Arthur Wallace, Jr., appellants, attempted
to probate their mother's will as a muniment of title, their niece, Barbara Wallace Hernandez,
appellee, opposed the application because it came more than four years after their mother's death. 
Tex. Prob. Code Ann. § 73(a) (West 1980). After a hearing, the probate court determined that
appellants were in default for their delay and refused to admit the will to probate. Appellants
bring two points of error, complaining that the evidence was legally and factually insufficient to
support a finding of default, and alleging that their due process rights have been violated by the
court's imposition of a requirement that they seek legal advice when they could not afford to do
so. We will affirm the probate court's order.


BACKGROUND


 Ruby Greer Wallace died on April 25, 1989, survived by her daughter Carole, her
son Dennis, and her granddaughter Barbara. (1) In a will executed May 29, 1961, Ruby Wallace
named Carole and Dennis co-executors and sole beneficiaries of her estate; she made no mention
of Barbara, the child of a son who had predeceased the testator. Carole Wallace, who was
unmarried and without children, had been living with her mother for many years at the time of
the mother's death; Dennis Wallace lived in South Texas with his wife; two of his six children
had died before this action was commenced. 

 The evidence reflected that Carole, who had been managing her mother's business
affairs, discovered the will soon after Ruby Wallace's death and contacted a family friend who
had been her mother's attorney to see if this was the last will her mother had executed. The
lawyer assured Carole that this was her mother's last will and urged Carole to be sure to have it
probated. Carole did not ask the family friend to handle the probate and did not even inquire
about costs and legal fees for probating the will. The estate was estimated to have a total value
between $50,000 and $100,000.

 Carole testified that she also contacted her brother immediately to let him know that
she had found the will naming the two of them as co-executors. Rather than contact an attorney,
Carole contacted the clerk of the probate court seeking information regarding the probate of the
will. The clerk's office had no brochure but directed Carole to the law library in the county
courthouse. Carole visited the law library, saw three volumes concerning the probate code, read
something about a seven year time period and erroneously concluded that she had seven years in
which to probate the will. 

 In December 1993, four and a half years after her mother's death, Carole attended
a seminar on retirement benefits at which a speaker mentioned the four-year time period imposed
by section 73(a) as a deadline for probating a will. Carole testified that she contacted an attorney
within a few weeks, but that attorney took no action to probate her mother's will for another six
months. She then contacted a second attorney who on September 14, 1994, filed the application
to probate the will at issue in this matter. Under the deadline imposed by section 73(a), the
application was filed almost seventeen months too late. When Barbara opposed the application
as untimely, the court held a hearing in May 1995, and concluded that neither Carole nor Dennis
presented a legal excuse that would allow them to avoid the time bar imposed by section 73(a). 
 

 At the hearing, Carole Wallace testified that she had not attempted to probate the
will sooner because her financial difficulties made her think she could not afford a lawyer. She
never contacted a lawyer to inquire how much it would cost to probate the will, she never asked
the probate clerk how much it would cost to file an application to probate the will, and she never
sought legal assistance as an indigent. Instead she relied on her cursory "reading" of the probate
code to believe that she had seven years in which to offer the will for probate. She testified that
she had been unemployed for two years prior to her mother's death, sporadically employed
thereafter, and that it was necessary to quit her job and withdraw her state retirement funds to
secure the services of a lawyer after she learned of the four-year deadline.

 Dennis Wallace testified that when his sister notified him that he had been named
a co-executor in their mother's will, he was grief-stricken about his mother's death, was working
60 hours a week trying to support his family, which included five children, one with a congenital
heart defect who was ill and subsequently died. Emotionally and physically drained, he testified
that he left all the arrangements regarding the will to his sister, who had been taking care of his
mother's affairs. On cross-examination, he testified that he exercised no diligence whatsoever and
left everything to his sister, even though he knew there was a will and knew that he was an
executor. 



ANALYSIS


 A party presenting a will more than four years after the testator's death has the
burden of proving that she was not "in default" in failing to timely present the will. Brown v.
Byrd, 512 S.W.2d 758, 760 (Tex. Civ. App.--Tyler 1974, no writ). A party is in default if the
delay is due to an absence of reasonable diligence. Brown v. Byrd, 512 S.W.2d 753, 755 (Tex.
Civ. App.--Tyler 1974, no writ). Only one of two applicants need show diligence for the will to
be admitted, even though both may benefit under the will. Fortinberry v. Fortinberry, 326
S.W.2d 717, 719 (Tex. Civ. App.--Waco 1959, writ ref'd n.r.e.). Whether the proponent of a will
is in default is a question of fact. Kamoos v. Woodward, 570 S.W.2d 6, 8 (Tex. Civ. App.--San
Antonio 1978, writ ref'd n.r.e.). In their first point of error, appellants challenge the legal and
factual sufficiency of the trial court's finding that they are both in default for the delay in
probating their mother's will. Because appellants have the burden of proof, they must prevail on
a no-evidence challenge and then must demonstrate on appeal that the evidence conclusively
establishes that they, or one of them, demonstrated reasonable diligence as an excuse for their
delay. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). Only when the contrary proposition
is established conclusively by the evidence will we sustain the point of error. Meyerland
Community Improvement Ass'n v. Temple, 700 S.W.2d 263, 267 (Tex. App.--Houston [1st Dist.]
1985, writ ref'd n.r.e.). 

 In deciding a legal-sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
Holley, 629 S.W.2d at 696. On the testimony presented by the record, appellants cannot
overcome this burden. There is ample evidence that neither Carole nor Dennis demonstrated
reasonable diligence in probating their mother's will. In finding both parties in default, the court
noted that although Carole relied primarily on her lack of financial resources, she never once
contacted an attorney to inquire about the costs of probating the will, nor did she make such an
inquiry of the probate clerk. Even when she called the family friend who drafted her mother's
will, Carole failed to ask him if he would probate the will or how much it would cost for someone
else to probate the will. Carole never asked Dennis for financial help in probating the will,
although he testified that he could have borrowed the money. Dennis never offered his sister any
financial assistance in pursuing probate. In fact, Dennis testified that he exercised no diligence
whatsoever, that he took no action to probate his mother's will, but instead relied solely on his
sister. Finally, even after Carole learned of the four-year deadline for probate in December 1993,
she did not file this application until September 1994, more than nine months later. 

 Both Carole and Dennis knew immediately of their mother's will and cannot rely
on the legal excuse of a lost will. None of the other explanations claimed by Carole have been
recognized as legal excuses for failure to timely probate a will. The record supports the judge's
finding that Carole's efforts in probating the will herself were not diligent. More than a cursory
review of the probate code would be required to proceed diligently without legal advice. 
Ignorance of the law is no excuse: "To hold otherwise would virtually eliminate the element of
default from . . . Probate Code, Sec. 73(a)." Brown, 512 S.W.2d at 757. Likewise, a verbal
family agreement not to proceed with probate is insufficient to avoid default. Id. Because the
evidence amply supports the trial court's finding that both Carole and Dennis were in default, we
overrule the first point of error.

 In their second point of error, appellants complain that by requiring the proponents
to seek legal advice to avoid default, even when they testified that they could not afford to hire
a lawyer, the probate court violated their constitutional right to due process. We have reviewed
the trial court's order and the statement of facts and hold that in framing this point of error the
appellants have misrepresented the trial court's determination. The trial court failed to find
reasonable diligence in Carole's failure to inquire about how much it would cost to probate her
mother's will. Even the court's oral comments do not support appellant's position. 



THE COURT:


 She uses the excuse, and the primary excuse is, "I didn't have the money to
probate the will," yet there's not one bit of evidence--and in fact, the testimony was
from her that she didn't ask a lawyer what it cost to probate a will. 

 

 She had no knowledge of what it cost to probate a will. She didn't ask the
clerk what are the costs of probating the will. And I cannot find that is reasonable
diligence to [sic] not to inquire about the costs of probating the will, when one is
saying, "Well, I didn't have the money to probate the will." 

 

. . . . 


 But I am troubled when you have a lawyer on the phone, you don't inquire
how much he would charge to probate the will. 


 I don't see how you can make a judgment that you can't pay for something,
plus we didn't even get into a discussion with a lawyer. "Well, who's responsible
for those costs?" Because as you well know, Mr. Ingram, these costs are
chargeable to the estate. We had an estate, we had a house, we had a car, we had
a bank account according to your pleadings, and those monies could come from
there. 


 Some lawyers ask for retainers, some lawyers don't ask for retainers. Some
lawyers may charge X, some lawyers will charge Y.


. . . . 


 [B]ut I think a reasonable, diligent person would say, "Mr. Mullens, how
much will you charge to probate that will, and how do you expect to get paid?" 



The judge went on to explain that a proponent may probate a will without a lawyer, but in doing
so she must diligently inform herself of what the law requires. Nothing in the court's judgment
required the appellants to seek legal advice in order to avoid default. Even the court's comments
from the bench only required them to use reasonable diligence in ascertaining the costs of legal
fees before refusing to go forward with probate due to financial difficulty, or to use reasonable
diligence to inform themselves of the law before proceeding without a lawyer. Because we hold
the judge's ruling did not violate any due process rights of the appellants, we overrule the second
point of error.

 Having overruled appellants' points of error, we affirm the probate court's order
refusing to probate the will and finding appellants in default for failing to present their mother's
will for probate within four years of her death. 

 


 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: February 28, 1996

Do Not Publish
1. Ruby Wallace's other son, the father of Barbara, died when the child was quite young. 
Barbara Wallace Hernandez testified that she had maintained a close relationship with her
grandmother; Carole Wallace testified that Ruby Wallace did not have a close relationship with
her granddaughter because Barbara's mother's family prevented reasonable visitation.